# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **17th** *day of* **December, 2024**.

Monica Drasovean, Appellant,

against          Record No. 0259-23-4
Circuit Court No. CL21-7439

Steven Walts, et al., Appellees.

Upon a Petition for Rehearing En Banc

Before Chief Judge Decker, Judges Beales, Huff, O'Brien, AtLee, Malveaux, Athey, Fulton, Causey, Friedman, Chaney, Lorish, Callins, White and Frucci

On November 20, 2024, the appellees, by counsel, filed a petition requesting that the Court set aside the judgment rendered on November 6, 2024, and grant a rehearing en banc on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the Court grants the petition for rehearing en banc and reinstates the appeal of those issues on the docket. The Court stays the mandate previously entered in this case pending the Court's en banc decision.

The parties must file briefs in compliance with the schedule set forth in Rule 5A:35(b).

A Copy,

Teste:

A. John Vollino, Clerk

By:    *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

# COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Causey and Callins
Argued at Winchester, Virginia

MONICA DRASOVEAN

v.      Record No. 0259-23-4

STEVEN WALTS, ET AL.

MEMORANDUM OPINION[*] BY
JUDGE DORIS HENDERSON CAUSEY
NOVEMBER 6, 2024

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Carroll A. Weimer, Jr., Judge

Benjamin F. North (Binnall Law Group, PLLC, on briefs), for
appellant.

John F. Cafferky (William B. Porter; Ian J. McElhaney;
Blankingship & Keith, P.C, on brief), for appellees.

The Circuit Court of Prince William County granted appellees' plea in bar and determined,

as a matter of law, that sovereign immunity bars gross negligence claims when a government

official is sued in his official capacity. On appeal, Monica Drasovean argues that the circuit court

erred in its decision. Precedent states that when a suit is brought against a government official

under the theory of gross negligence, sovereign immunity does not block that claim. However,

when a defendant is sued in his official capacity, the suit is effectively against the entity with which

he is employed. Thus, the question in this case is whether the sovereign immunity to which school

boards are entitled bars claims of gross negligence. This is a matter of first impression. We hold

that the circuit court erred in granting the plea in bar, reverse, and remand the holding of the circuit

court to determine whether the alleged actions taken by the appellees amounted to gross negligence.

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

BACKGROUND

The Prince William County School Board (School Board) operates the Prince William County Public Schools (PWCS). During the 2016-17 school year, Monica Drasovean was a student enrolled in the Special Education Program at C.D. Hylton High School (Hylton). During this time, Dr. Steven Walts served as PWCS's Superintendent, Dr. Michelle Roper served as the Director of Special Education for PWCS, and David Cassady served as the principal of Hylton (collectively School Board Employees).

Around November 2016, H.A.[1] transferred from another high school into Hylton's Special Education Program. Drasovean alleges that H.A. had "a known troubled record involving harmful, sexual, and abusive behavior." According to Drasovean, before H.A. arrived at Hylton, a teacher at Hylton contacted the school's head of the Special Needs Education Department and relayed her opinion that "[H.A.] would not be a good fit for the special needs program at Hylton and would pose a danger to other students." The department head then relayed this concern to Cassady, who contacted Dr. Roper about the transfer. Dr. Roper ultimately allowed H.A. to transfer to Hylton.

Upon his arrival at Hylton, H.A. was placed in several classes with Drasovean that were supervised by teachers, and at least one class included both a teacher and a teacher's aide. Drasovean alleges that, from November 2016 to January 2017, H.A. sexually assaulted Ms. Drasovean by touching her breasts and legs, kissing her, and "trying to take her outside of the school building to perform other sexual acts on her." Drasovean alleges that many of these acts occurred in one of Ms. Drasovean's classes, which was attended by only four other students, and many of "the assaults occurred in open view of other people." Ms. Drasovean's teachers never saw these assaults. On January 23, 2017, Ms. Drasovean reported the assaults to her mother, who then reported them to Hylton.

---

[1] We use initials to refer to the student in an attempt to better protect his privacy.

On January 22, 2019, Drasovean filed her first action (first action) in the Circuit Court for Prince William County against the School Board Employees, the Virginia Board of Education, and directly against the School Board, alleging that, while Ms. Drasovean was a student at Hylton, H.A. assaulted her. The complaint in the first action alleged claims for "negligence/gross negligence" in violation of 42 U.S.C. § 1983, and violations of Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act.

The first action was removed to the United States District Court for the Eastern District of Virginia, where Drasovean's federal claims were dismissed, and her state law negligence claims were remanded to circuit court. The circuit court sustained defendants' demurrers to Drasovean's simple negligence claim with prejudice but granted Drasovean leave to amend her claim for gross negligence.

Drasovean filed an amended complaint alleging a single count of gross negligence against the Virginia Board of Education and the School Board Employees, however, she nonsuited the first action on March 2, 2021. Subsequently, Drasovean filed this action, asserting a single count of gross negligence against the School Board Employees in their official capacities only.

The School Board Employees filed a plea in bar on the ground that Drasovean's complaint against them in their official capacities amounted to a suit against the School Board. They argued that the School Board is entitled to sovereign immunity in tort, and because a suit against them in their official capacities is effectively against the School Board, sovereign immunity should bar the complaint. On January 13, 2023, the circuit court heard oral argument. The court held that

> the manner which the defendants have been sued, that is their
> official capacity, this is tantamount or the same as a suit against the
> governmental entity and the governmental entity enjoys sovereign
> immunity as to . . . all negligence, and as such, these employees in
> their official capacity are immune pursuant to sovereign immunity.

Consequently, the circuit court granted the School Board Employees' plea in bar, dismissing the case with prejudice. This appeal timely follows.

## ANALYSIS

### I. *Standard of Review*

"The existence of sovereign immunity is a question of law that is reviewed de novo." *Burns v. Gagnon*, 283 Va. 657, 673 (2012) (quoting *Lee v. City of Norfolk*, 281 Va. 423, 439 (2011)). "A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010). "The party asserting a plea in bar bears the burden of proof on the issue presented." *Id.* The circuit court held a hearing where the parties presented their arguments. However, "[w]here no evidence is taken in support of the plea, the trial court, and the appellate court upon review, must rely solely upon the pleadings in resolving the issue presented." *Robinson v. Nordquist*, 297 Va. 503, 513-14 (2019) (quoting *Tomlin v. McKenzie*, 251 Va. 478, 480 (1996)). Additionally, "[i]n doing so, the facts stated in the plaintiff's [complaint] are deemed true." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (second alteration in original) (quoting *Lostrangio v. Laingford*, 261 Va. 495, 497 (2001)). "This approach results in functionally de novo review of the trial court's judgment." *Id.* Here, the issue of gross negligence and school boards is one of first impression for this Court.

Whether the School Board is entitled to sovereign immunity, the scope of that immunity, and whether that immunity bars a claim of gross negligence is the question of this appeal. Given the complexity of this inquiry, it is necessary to understand the history of sovereign immunity, its application under Virginia law, and the difference between the sovereign immunity available to various governmental entities and the sovereign immunity available to individuals employed by those entities.

- 4 -

## II. *History of Sovereign Immunity*

We begin with the doctrine of sovereign immunity, which is rooted in English common law and adhered to the notion that "no suit or action can be brought against the king, even in civil matters, because no court can have jurisdiction over [the Crown]." *Alden v. Maine*, 527 U.S. 706, 715 (1999) (quoting 1 W. Blackstone, *Commentaries on the Laws of England* 234-235 (1765)). "'Dual sovereignty is a defining feature of our Nation's constitutional blueprint.' Upon ratification of the Constitution, the States entered the Union 'with their sovereignty intact.'" *Sossamon v. Texas*, 563 U.S. 277, 283 (2011) (citation omitted). Federalism presupposes that the States retain exclusive sovereignty in some aspects of governance, share sovereign power with the federal government in other aspects, and yield their sovereign power only in those aspects of governance exclusively assigned to the federal government by the United States Constitution." *Clark v. Va. Dep't of State Police*, 292 Va. 725, 728 (2016).

The application of this immunity, in practice, was unique in the United States because of the inherent qualities of federalism: though the nation itself was a sovereign, the states retained their sovereignty in relation to one another and the federal government. This principle led to the ratification of the Eleventh Amendment, which codified state sovereign immunity at the federal level: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The ratification of the Eleventh Amendment followed the 1793 case *Chisholm v. Georgia*, 2 U.S. 419 (1793), where the Court ruled that a citizen of South Carolina could sue the state of Georgia. In that case, Justice Iredell disagreed and reasoned that if the common law barred suit against the sovereign, then the states necessarily, absent express consent, must be similarly protected.

Following Justice Iredell's reasoning, the first congressional meeting following the Court's decision in *Chisholm* led to the ratification of the Eleventh Amendment, which codified a state's immunity from suit in federal courts in actions brought against it by citizens of another state. Although the Eleventh Amendment applied specifically to the power of the federal judiciary, its underlying principles began to be applied by the states in the states. It was the nature of the Eleventh Amendment and the inherent structure of the Constitution itself that led the Court in *Alden* to find that each state has a "constitutional privilege . . . to assert its sovereign immunity in its own courts." 527 U.S. at 754.

### A. *Sovereign Immunity: The State as a Party*

When a state is a named party in a suit, it has a right to assert its sovereign immunity as a bar to the continuation of the suit. While a state may waive its sovereign immunity either by statute or by consent, such a waiver must be express.[2] *See Alden*, 527 U.S. at 724 ("The handful of state statutory and constitutional provisions authorizing suits or petitions of right against States only confirms the prevalence of the traditional understanding that a State could not be sued in the absence of an express waiver."). The State is likewise immunized when it is not a named party, but when an officer of the state is sued in a manner that renders the suit

---

[2] Many states, including Virginia, have codified liability for certain state and government employees and entities under certain circumstances. In 1981, the Virginia legislature enacted the Virginia Tort Claims Act, which "constitutes an express limited waiver of the Commonwealth's immunity from tort claims." *Bates v. Commonwealth*, 267 Va. 387, 391 (2004); *see also* Code §§ 8.01-195.1 – 8.01-195.9. Shortly after the law was codified, the Fairfax County Circuit Court held that the Fairfax County "School Board is a 'state agency' as defined in [Code §] 8.01-195.2, and its Plea of Sovereign Immunity is overruled." *Murphy v. Fairfax Cnty. Sch. Bd.*, 6 Va. Cir. 97, 98 (Fairfax Cnty. 1984). In 1986, the Act was amended, explicitly stating that "'[s]chool boards' as defined in paragraph 5 of § 22.1-1 are not state agencies nor are employees of school boards state employees." 1986 Va. Acts ch. 534.

functionally against the state.[3]  *Id.* at 756 ("Some suits against state officers are barred by the rule that sovereign immunity is not limited to suits which name the State as a party if the suits are, in fact, against the State.").  However, though sovereign immunity "bars suits against the States," it does not bar suits against "lesser entities" such as "municipal corporation[s] or other governmental entit[ies] which [are] not an arm of the State."  *Id.*

### 1.  *Derivative Sovereign Immunity: State Agents and Officers*

When an agent or officer of the state is sued in his individual capacity, the suit may be barred by an application of the state's sovereign immunity to the state actor.  *See Messina v. Burden*, 228 Va. 301, 309 (1984).  While the state itself, and the qualifying arms of the state, are entitled to absolute immunity from civil actions, agents and employees of the state may be entitled to that same immunity on a qualified basis.  *See Sayers v. Bullar*, 180 Va. 222, 230 (1942).

Whether an officer or employee of a government agency may claim sovereign immunity is dependent both upon the scope of the immunity to which his employer is entitled and the extent to which his actions satisfy the derivative immunity's qualifications.  *James v. Jane*, 221 Va. 43, 52 (1980).  For example, when state officers are sued in their individual capacity for actions taken within the scope of their employment, they are typically immune, as those actions are considered extensions of the state's authority.  *Sayers*, 180 Va. at 229 ("[t]he alleged act of the defendants was the act of the State").  Such immunity does not extend to an officer of the state, however, when his actions are "so negligent as to take him outside the protection of his

---

[3] *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (stating that the "'general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter'" (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam))); *see also Larson v. Domestic & Foreign Comm. Corp.*, 337 U.S. 682 (1949) (noting that the relief sought and against whom the relief is obtained is the greatest determining factor in questions of whether a suit nominally against an officer is functionally one against the state).

employment" and thus out of the realm of the protection of the state's sovereign immunity. *James*, 221 Va. at 52. Similarly, the state's sovereign immunity does not extend to employees who engage in intentional misconduct. *Se*e *Tomlin*, 251 Va. at 481 (stating that "where sovereign immunity is claimed by an agent of the state, rather than by the state as an entity, it will not be extended to acts which constitute a wanton and intentional deviation from the duties the agent has been assigned to undertake"). The characterization of *conduct* as part of a sovereign immunity analysis, though discussed in this section strictly in its application to state agents and officers, raises unique implications in the present case and requires an inquiry as to how "conduct" itself applies to suits against entities. This will be discussed further along in the analysis.

### 2. *State Sovereign Immunity Extended to Government Entities: Classification as an "Arm of the State" versus a local municipality*

While *Alden* clearly states that sovereign immunity does not protect municipal corporations or lesser entities from suit, it qualifies that limitation with the phrase "which is not an arm of the State." 527 U.S. at 756. Governmental entities that *are* considered arms of the State are thus entitled *to the same sovereign immunity as the State itself*. *See Mann v. County Bd. of Arlington Cnty.*, 199 Va. 169 (1957).

When determining whether a municipality or other local government entity is an "arm of the state," Virginia courts have traditionally inquired as to the entity's creation and the nature of its performed functions. When a local government entity is "purely local in nature and not a state agency performing a function of state government," then it is "not entitled to the same immunity from tort liability that is enjoyed by the Commonwealth." *Va. Elec. & Power Co. v.*

*Hampton Redevelop. and Housing Auth.*, 217 Va. 30, 33 (1976).[4]  Thus, an entity "purely local

in nature" would not be considered an "arm of the state," but rather a municipality or municipal

corporation.  *Id.*  Although municipalities and municipal corporations are tangentially connected

to the state government, is well settled that "a municipality is clothed with two-fold functions;

one governmental, and the other private or proprietary."  *Hoggard v. City of Richmond*, 172 Va.

145, 147 (1939).  When an injury arises from an alleged negligent exercise of a municipal

corporation's authority, courts attempt[5] to categorize the function of the municipal corporation as

either governmental or proprietary: a "function is considered governmental if it is the exercise of

an entity's political, discretionary, or legislative authority," but a function is considered

proprietary when it "is a ministerial act, 'assumed in consideration of the privileges conferred by

. . . charter,' and involves no discretion."  *Carter v. Chesterfield Cnty. Health Comm'n*, 259 Va.

588, 591 (2000) (quoting *City of Richmond v. Long's Adm'rs*, 58 Va. (17 Gratt.) 375, 379

(1867)).  Such a distinction is necessary for determining that entity's immunity, as "[m]unicipal

corporations are immune from tort liability when performing governmental functions, but are not

immune when exercising proprietary functions."  *Id.* at 590.  The distinction between "arms of

the state" and local municipalities is crucial to this case, as the school board's respective

classification determines the degree of sovereign immunity to which it is entitled.

---

[4] Factors to be considered in distinguishing an entity's local rather than state
governmental functions are its statutory authority, the procedures through which its officials are
elected or appointed, and how its finances are managed and apportioned.  *See Va. Elec. & Power
Co.*, 217 Va. at 33.

[5] Distinguishing between governmental and proprietary functions is a matter of rhetorical
ease, but practical difficulty.  *See Carter v. Chesterfield Cnty. Health Comm'n*, 259 Va. 588, 592
(2000) ("the principles for differentiating governmental and proprietary functions are easily
recited, as we have often noted, application of these principles 'has occasioned much difficulty'"
(quoting *Ashbury v. City of Norfolk*, 152 Va. 278, 282 (1929))).

### 3. *Derivative Sovereign Immunity: Employees of Municipalities and Lesser Government Entities*

In the same way that a municipal corporation or local government body may be entitled to the state's sovereign immunity depending on the nature of its functions, so too may an employee of such an entity be entitled to immunity. When a person is an agent of a "lesser entity" of the state, like a municipal corporation, his potential entitlement to derivative sovereign immunity involves a two-step inquiry: the scope of the immunity to which the entity itself is entitled, and whether the employee satisfies the requirements for claiming that immunity. *Patterson v. City of Danville*, 301 Va. 181, 189 (2022). If a municipality is not itself entitled to sovereign immunity by nature of its proprietary—as opposed to governmental—functions, then its agents are not entitled to sovereign immunity even for acts of simple negligence. *See Fines v. Rappahannock Area Cmty. Servs. Bd.*, 301 Va. 305, 313 (2022).

Just as the inquiry regarding a municipality's entitlement to sovereign immunity centers upon the nature of its functions, an inquiry regarding the derivative sovereign immunity available to its agents centers upon the nature of that agent's actions. *Id.* When an employee is entitled to derivative sovereign immunity, that immunity can be overcome with claims of gross negligence. *Patterson*, 301 Va. at 197 ("[a]llegations of gross negligence can pierce through a derivative-sovereign-immunity defense asserted by an otherwise immune government employee").

However, in certain instances, even acts of simple negligence may proceed against a defendant entitled to sovereign immunity. The Supreme Court of Virginia routinely depends upon a "four, non-exclusive factor" test to determine whether derivative sovereign immunity is available to such an employee in actions alleging simple negligence:

> (i) the nature of the function performed by the employee; (ii) the extent of the [governmental employer's] interest and involvement in the function; (iii) the degree of control and direction exercised by the [governmental employer] over the employee; and (iv)

- 10 -

> whether the act complained of involved the use of judgment and
> discretion.

*Id.* at 190 (alterations in original) (quoting *Messina*, 228 Va. at 309); *see also James*, 221 Va. at 52. While the present case concerns the school board's immunity, not the individual employees' immunity, the analyses set forth in *Patterson*, *Messina*, and *James* underscore the importance in recognizing the variations in sovereign immunity and its availability to certain employees and entities.

### B. Derivative Sovereign Immunity in Virginia: Case Law

In *James v. Jane*, two patients sought to recover damages from their respective injuries following the allegedly negligent acts of the defendants. 221 Va. at 45. Upon the defendants' pleas of sovereign immunity predicated upon their employment with the University of Virginia, the Court established a comprehensive four-factor test for determining when an employee is entitled to derivative sovereign immunity for acts of simple negligence. *Id.* at 53. Although the physicians were each employees of the University, which "no one question[ed]" was an "agency of the Commonwealth of Virginia [and therefore] entitled to the protection of the immunity of the state," the Court found that "[a] physician who fails to use reasonable care in the treatment of a patient acts at his own risk, and is not entitled to invoke the doctrine of sovereign immunity." *Id.* at 51, 55. Thus, employees of state agencies have limited state immunity.

Two years later, the Court relied on its recent decision in *James*, as well as the decisions in *Kellam*,[6] *Crabbe*[7] and *Short*,[8] and the statutory and constitutional constructions of the office of both a high school principal and a superintendent, in deciding whether defendants holding such

---

[6] *Kellam v. Sch. Bd. of City of Norfolk*, 202 Va. 252 (1960).

[7] *Crabbe v. County Sch. Bd. of Northumberland Cnty.*, 209 Va. 356 (1968).

[8] *Short v. Griffiths*, 220 Va. 53 (1979).

offices were entitled to sovereign immunity. In *Banks v. Sellers*, 224 Va. 168 (1982), when a high school student alleged that the injuries she sustained after being stabbed by another student were the result of the defendants' negligence in failing to provide her with a safe environment, the Court held that both the principal and the superintendent were "entitled to sovereign immunity" because they were, respectively, a "supervisory official who exercises powers involving a considerable degree of judgment and discretion" and "essentially a counterpart to the superintendent [whose] function is very similar." *Id.* at 173. Notably, the *Banks* case concerned the immunity available to those individuals by the nature of their jobs. Although the defendants in this case hold the same offices, the defendant officials in *Banks* were not sued in their official capacities.

In 1983, when a plaintiff was injured because of an automobile accident sued the state superintendent of the expressway for his allegedly negligent failure to "provide barriers and other traffic control devices sufficient to prevent vehicles from entering the wrong lane of travel," the Court further explicated its understanding and application of the doctrine of sovereign immunity. *Hinchey v. Ogden*, 226 Va. 234, 237 (1983). While the plaintiff in *Hinchey* argued that the purpose of sovereign immunity is to protect state funds and should therefore not apply to the superintendent as she was not seeking to recover from the treasury, the Court "disagree[d] with Hinchey's contention that the protection of the public purse is the sole justification for the doctrine of sovereign immunity." *Id.* at 239. Instead, the Court found that while the protection of the state treasury is a factor of sovereign immunity, "the principal justification [in this case] for upholding the claim of sovereign immunity is the need for order and uniformity in the administration of the affairs of government." *Id.* at 240. *Hinchey*, too, was an individual capacity case.

Finally, in the 1984 case *Messina v. Burden*, the Court examined "under what circumstances an employee of a governmental body is entitled to the protection of sovereign immunity." 228 Va. at 307. The Court's comprehensive analysis of the purpose of the doctrine and the history of its application in Virginia courts resulted in an affirmation of the decision below. Most notably, the Court's analysis included the rationale that "the *absence of any claim of gross negligence* or intentional misconduct demonstrates the correctness of the trial court's decision to sustain the plea of sovereign immunity." *Id.* at 311 (emphasis added). The Court noted this absence once again in *Lentz v. Morris*, 236 Va. 78 (1988), finding that the facts in *Lentz* "[did] not support a charge of either gross negligence or intentional misconduct," the Court held that the defendant schoolteacher was entitled to derivative sovereign immunity based upon the immunity of the school board. *Id.* at 82. Both *Messina* and *Lentz* were individual capacity cases.

C. *Virginia School Boards and Sovereign Immunity*

While the "doctrine of sovereign immunity is 'alive and well' in Virginia," it has not "persevered . . . without substantial debate over its permissible scope and the consistency of its applications." *Messina*, 228 Va. at 307; *Patterson*, 301 Va. at 189. This difficulty is clear insofar as the doctrine has been applied to local school boards and their employees. As this suit pertains to school board employees in their official capacities only, we must analyze sovereign immunity solely in its application to the school board.

In a matter of first impression, the Supreme Court of Virginia held in *Kellam v. School Board of City of Norfolk*, 202 Va. 252 (1960), that a school board was considered an arm of the state. This was reasoned through analogy to similar statutory constructions and holdings in West Virginia law, which the Court found was "applicable and persuasive because of the similarity of the law in Virginia and West Virginia governing school boards." *Id.* at 255. Relying on

*Kellam*'s holding and the subsequent case law involving the application of sovereign immunity to school boards, Virginia courts applied the doctrine in varying ways throughout the next several decades.

When a student brought suit against his shop teacher alleging that the teacher's negligence in allowing the student to use a broken table saw led to the student's injury, the Court in *Crabbe v. School Board of Northumberland County*, 209 Va. 356 (1968), held that the "defendant School Board is immune from liability for the injuries sustained by the plaintiff by reason of its alleged negligence," but disagreed "with the contention of this defendant that the immunity of the School Board from liability to the plaintiff extends to him." *Id.* at 358-59.

Similarly, in 1979, the Court held in *Short v. Griffiths*, 220 Va. 53 (1979), that "employees of a local school board did not enjoy the governmental immunity afforded the board, and were responsible for their acts of simple or ordinary negligence." *Id.* at 56 (relying on *Crabbe*, 209 Va. 356, where the defendant schoolteacher was liable for his negligence despite the School Board enjoying sovereign immunity). *Short* was an individual capacity suit in which the defendant school board employee was not immune, but the school board was. The school board was immune because of its classification in *Kellam* as an "arm of the state" rather than a municipal corporation.

A decade later, however, the Court expressly overruled *Short*, and overruled *Crabbe* "insofar as it address[ed] the employee's liability in that case." *Lentz*, 236 Va. at 82 (holding that defendant gym teacher was entitled to sovereign immunity absent a claim of "gross negligence or intentional misconduct"). The Court's decision in *Lentz* was based upon the factors outlined in *Messina*, which established Virginia's test for determining which government employees were entitled to the sovereign immunity of the state based on their employment.

Relying on *Lentz*, Virginia circuit courts continued to grant school employees derivative sovereign immunity in claims alleging simple negligence. *See Koffman v. Garnett*, 265 Va. 12 (2003); *see also Locklear v. Pometto*, 28 Va. Cir. 307 (Fairfax Cnty. 1992); *Summerell v. Wolfskill*, 34 Va. Cir. 518 (Southampton Cnty. 1994). In several cases, Virginia circuit courts have held that school boards and their employees enjoy immunity even when gross negligence is alleged. *Croghan v. Fairfax County Sch. Bd.*, 59 Va. Cir. 120, 121 (Fairfax Cnty. 2002) ("[T]he immunity shared by the state and its agencies (including school boards) is absolute and applies as a bar to liability whether the degree of alleged negligence is simple or gross."); *Mattox v. Campbell Cnty. Sch. Bd.*, 37 Va. Cir. 221, 222 (Campbell Cnty. 1995) ("[T]he doctrine of sovereign immunity protects the Campbell County School Board from allegations of both simple negligence and gross negligence.").

In 2012, however, the Circuit Court in the City of Suffolk overruled the school board's plea of sovereign immunity as to plaintiff's "[c]ounts IV and XX of the Complaint," since those counts "allege[d] gross negligence by the School Board and its employees" and "sovereign immunity does not apply where gross negligence is alleged." *Simpson v. Thorsen*, 84 Va. Cir. 252, 255 (Suffolk 2012). While this holding applied specifically to the sovereign immunity of the school board, the issue of derivative sovereign immunity as applied to school board employees was decided by the Virginia Supreme Court only several months later in *Burns*.

When a former Gloucester County High School student filed a complaint against two students and the assistant principal alleging "simple and gross negligence, assault, and battery," the Court explained that although "an individual working for an immune governmental entity is entitled to the protection of sovereign immunity under the common law, he is not immunized from suit" and that in order to overcome an employee's derivative sovereign immunity, the

"'degree of negligence . . . is elevated from simple to gross negligence.'" *Burns*, 283 Va. at 663, 677 (quoting *Colby v. Boyden*, 241 Va. 125, 128 (1991)).

Although a suit against the named defendants in their official capacities is functionally a claim against the school board, the school board's sovereign immunity should be scrutinized under the factors set forth in *Messina*, *Lentz*, and *Burns*, because Virginia school boards should be considered municipal corporations rather than arms of the state.

### D. *Virginia School Boards should be considered municipal corporations rather than arms of the state*

In both statutory construction[9] and in function, a school board is a municipal corporation. This classification of Virginia school boards was examined thoroughly by the Eastern District Court of Virginia in *Drewrey v. Portsmouth City School Board*. 264 F. Supp. 3d 724 (E.D. Va. 2017). In *Drewrey*, the court examined whether the Portsmouth City School Board was entitled to sovereign immunity. Based on four factors, originally applied by the Fourth Circuit Court of Appeals in *Cash v. Granville County Board of Education*, 242 F.3d. 219 (4th Cir. 2001), the District Court found that the school board was not an arm of the State and therefore not entitled to sovereign immunity. *Drewrey*, 264 F. Supp. 3d at 727. The court in *Drewrey* examined the following factors: (1) the State treasury, (2) the degree of control exercised by the state over the school board, (3) the degree to which the school board was focused on local versus statewide concerns, and (4) how the school board was treated under state law. *Id.* The court found that "Virginia law characterizes its school boards as local governmental entities, not arms of the State," and thus the Portsmouth City School Board was not entitled to a claim of sovereign immunity. *Id.* at 730. When applied to the facts in this case, specifically, to the Prince William City School Board, the *Drewrey* factors show that the school board should be treated as a

---

[9] Code § 22.1-71.

municipal corporation rather than an arm of the State. Thus, Prince William County School Board is not entitled to sovereign immunity according to the *Drewrey* factors.

### III. *The Drewrey Factors*

### A. *The State Treasury Factor*

Code § 22.1-82(B) requires that all "costs, expenses and liabilities of [any legal proceeding to which the school board, member or official may be party[10]] shall be paid out of funds appropriated to the school board." The funds appropriated to the school board are an amalgamation of state funds, federal funds, local funds, and donations. Code § 22.1-88. Thus, even if an argument could be made that funds apportioned to the School Board are partially funded by the State and thus affect the State treasury, it is not the State treasury itself. Such logic would run against the doctrine that suits may lie against officers in their individual capacity so long as the judgments paid come from the officer's pockets. An officer's income is at least partially made up of State funds. An indirect or unsubstantial monetary contribution to a suit cannot be considered functionally the same as a suit which solely and directly implicates the State treasury. Thus, PWCS Board funds are not part of the Virginia State Treasury.

### B. *Degree of Control*

Virginia school boards exercise both discretionary and financial control over the operation of their schools. *Drewrey*, 264 F. Supp. 3d at 728. While the Commonwealth has some degree of control, for the most part Virginia school boards "retain[] sole decisionmaking authority" and "a wide breadth of financial autonomy and independent responsibilities." *Id.*; Code §§ 22.1-28, -79. Furthermore, its officials are "locally elected and appointed" as opposed to appointed by the Governor. *Drewrey*, 264 F. Supp. 3d at 729; Code § 22.1-76(A). The degree of Commonwealth involvement and control over local school boards ends at their statutory

---

[10] *See* Code § 22.1-82(A) for alteration.

- 17 -

construction,[11] which designates the school board as a "body corporate." Code § 22.1-71. Statutory creation does not demonstrate enough state control over school boards to classify them as "arms of the state" rather than municipal corporations. The Commonwealth of Virginia has a limited degree of control over the PWCS Board.

## C. *Local versus Statewide Concerns*

Although school boards are tasked with the promulgation of the Commonwealth's educational standards, each school board sets its own "locality-level policies," such as determining the length of the school year, the curriculum, "the methods of teaching[,] and the government to be employed in the schools." *Drewrey*, 264 F. Supp. 3d at 730. While these policies cannot be inconsistent with the statewide standards, the school boards, comprised wholly of locally selected members, are solely responsible for the establishment and promulgation of those policies. Code § 22.1-79(5). Therefore, although Virginia exercises "limited involvement in some general standards for state-wide education," the "concerns of [Virginia] school boards are primarily local." *Drewrey*, 264 F. Supp. 3d at 730.

## D. *State Law's Treatment of the Entity*

*Drewrey*'s fourth factor regarding the state law's treatment of the entity in question requires the most nuanced analysis for the purposes of the present case. The court found in *Drewrey* that, although the Board argued that "the Supreme Court of Virginia found [in *Kellam*] that a school board is considered an arm of the State," *Kellam* was not applicable, as the case at hand was a question of federal law rather than a claim in tort. *Id*. Although the present case involves a tort law claim, and therefore invokes *Kellam*, it would be a mistake to "treat[] a state court decision as to whether an entity is a state actor as determinative." *Id*. Rather than applying

---

[11] Code § 22.1-28.

- 18 -

the dicta of a single case in isolation, *Drewrey*'s fourth factor is better analyzed through a wholistic understanding of the state's treatment of the entity over time.

The Virginia Tort Claims Act abrogated the sovereign immunity of state agencies for actions in tort. Code § 8.01-195.2. This abrogation led the Fairfax County Circuit Court to find that because the "School Board [was] a 'state agency' as defined [in the Act], [its] Plea of Sovereign Immunity is overruled." *Murphy v. Fairfax Cnty. Sch. Bd.*, 6 Va. Cir. 97, 98 (Fairfax Cnty. 1984). In 1986, the Act was amended to explicitly state that school boards were not considered agencies of the state for purposes of the Act, thereby excluding school boards from the statutory abrogation of the sovereign immunity of state agencies. 1986 Va. Acts ch. 534. While this exclusion in light of the decision in *Murphy* implies that the Virginia legislature wants school boards to retain their entitlement to sovereign immunity, classifying the school boards as municipal corporations does not undermine that goal. Rather, it subjects local school boards to the same analysis and protection as any other government municipality. In actions concerning its governmental functions, school boards will still be immune in tort. This immunity will accomplish what all sovereign immunity doctrine seeks to accomplish—the necessary furtherance of governmental goals, policies, and procedures will not be prohibited for fear of suit. However, it will also ensure the protection of those to whom the school board is accountable when the school board is engaged in proprietary functions. Thus, overall, school boards have been treated as municipalities by the State of Virginia, and their entitlement to sovereign immunity should be subject to the same analysis as other municipalities.

### IV. *PWCS Board: Government Entity or Municipality*

In light of the varying degrees and possible applications of sovereign immunity, the question raised on appeal requires two wholly separate and distinct analyses. First, because the circuit court's determination that "the manner in which the defendants have been sued, that is

their official capacity, [is] tantamount or the same as a suit against the [School Board]," we must first decide whether the circuit court erred in classifying the school board as a "government entity" rather than a "municipality." As noted earlier in our analysis, the scope of the immunity available to the School Board is dependent upon this classification. Second, this Court must determine, for the first time, whether the degree of negligence pled against an entity, as opposed to an individual, should determine whether the suit is barred by sovereign immunity.

A. *Official Capacity versus Individual Capacity*

"Official capacity" suits are effectively suits against the entity for whom the individual works and are separate and distinct from "individual capacity" suits where the individual is sued for the actions he took while acting within the scope of his employment. The capacity in which these defendants were sued is neither irrelevant nor a matter of semantics. The Virginia Supreme Court and the United States Supreme Court have made it clear that "individual capacity" and "official capacity" are wholly distinct. *See Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 221 (2023) ("Critically, both 'official capacity' and 'individual capacity' have come to be terms of art.").

Official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).

> Proper application of [the] principle [that "liability on the merits and responsibility for fees go hand in hand"] in damages actions against public officials requires careful adherence to the distinction between personal- and official-capacity action suits. Because this distinction apparently continues to confuse lawyers and confound lower courts, we attempt to define it more clearly through concrete examples of the practical and doctrinal differences between personal and official capacity actions.

*Kentucky v. Graham*, 473 U.S. 159, 164 (1985).

Individual or personal capacity suits against government agents seek to impose personal liability upon the officer for his actions taken under color of state title. In contrast, an official-

- 20 -

capacity suit is simply "another way of pleading an action against an entity for which an officer is an agent." *Monell*, 436 U.S. at 690 n.55.  Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," because "while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Graham*, 473 U.S. at 166.

Indeed, the Supreme Court recently re-emphasized this distinction in *Suffolk City School Board v. Wahlstrom*, 302 Va. at 221:

> In the more than a century since *Ex Parte Young*, [209 U.S. 123 (1990),] public officials have, depending on the circumstances, been subject to suit in either their official capacities or their individual capacities, with different procedures and immunity rules applying as a result of those circumstances.  Critically, both "official capacity" and "individual capacity" have come to be terms of art as it pertains to suits against government officials and are neither interchangeable nor synonymous.

Here, because each of the named defendants (officers/agents of the School Board) was sued only in his or her official capacity, the suit is essentially a suit against the (government entity) Prince William County School Board.  Indeed, it was upon this basis that the trial court granted appellees' plea in bar.  Thus, the proper inquiries for this Court on appeal are determining whether the School Board is entitled to sovereign immunity and, if so, the scope of that immunity.

## B.  *PWCS Board Sovereign Immunity*

It is undisputed that the suit against the three named defendants, in their official capacity, is functionally against the School Board.  Most illustrative of this distinction and its importance is this Court's most recent decision regarding school boards in *Ibanez v. Albemarle County School Board*, 80 Va. App. 169 (2024).  In *Ibanez*, plaintiff parents, on behalf of themselves and their minor children, sued the school board alleging that its Anti-Racism Policy "violate[d] their

rights under the Virginia Constitution and a Virginia statute." *Id.* at 176. The trial court "found that the underlying constitutional and statutory provisions were not self-executing and dismissed their claims for lack of standing," and sustained the defendants' plea in bar raising the defense of sovereign immunity. *Id.* This Court noted that, pursuant to the holdings in *Kellam* and *Banks*, "the doctrine of sovereign immunity 'applies not only to the state, but also to certain government officials,'" which "generally includes school boards . . . and school officials acting in their official capacities." *Id.* at 189 (quoting *Gray v. Va. Sec'y of Transp.*, 276 Va. 93, 102 (2008)). Without relying too heavily on the import of a single word, this Court's use of the word "generally" regarding the sovereign immunity of school boards allows for the understanding that a differentiation can and should be made between school boards' policies and the actions of its officials.

Although a school board should be entitled to sovereign immunity insofar as such entitlement serves the doctrinal purpose of protecting a local government entity's ability to promulgate its state-apportioned duties, its sovereign immunity should be qualified in the same manner as the immunity to which an employee or official is entitled. The school board can create, adopt, and implement policies according to its statutory duties. Where a school board is sued based on its policies, the doctrine of sovereign immunity is reasonable. However, where a school board employee is sued for the actions taken under color of his title, the sovereign immunity to which he is entitled is based upon the characterization of his conduct. In this case, although the underlying alleged actions are attributable to the three individually named defendants, the "official capacity" status of the suit necessarily characterizes those actions as actions *taken by the school board*.[12] In reality, the school board cannot, as an entity, "act" in the

_____

[12] This recalls the earlier point, that the characterization of conduct in derivative sovereign immunity cases raises a unique question in this case.

ordinary sense of the term; it "acts" *through* its agents and employees. *See Pulliam v. Coastal Emergency Servs. of Richmond, Inc.*, 257 Va. 1, 24 (1999) ("A corporation can act only through its officers and agents."). This distinction closely mirrors the distinction of governmental and proprietary functions comparatively in the determination of the sovereign immunity available to municipal corporations or local government entities.

For that reason, the same analysis should be applied to school boards. Where a school board's actions should be considered governmental, like the promulgation and implementation of policies, it should be entitled to sovereign immunity. But where, as here, the underlying claim is based upon individual actors or actions rather than policy or other governmentally necessary duties, a school board's "actions" should be considered proprietary. When based upon the characterization of the actions or omissions of its employees, the extent of the school board's sovereign immunity should be subject to the analysis in *Lentz*: the school board should be immune for acts of simple negligence, but should not be immune for acts of gross negligence or intentional misconduct. Immunity cannot be asserted when gross negligence, rather than simple negligence, is alleged.

C. *Whether Sovereign Immunity Bars a Claim against a School Board Is a Matter of Degree*

When a local entity, like a school board, is sued based on its agents' actions, the factors differentiating the entity from the state itself do not support an entitlement to absolute immunity such that actions alleging gross negligence should not proceed. The *Drewrey* analysis is essential to this determination. Appropriately, when a judgment is rendered against a school board, funds awarded in the judgment come from the school board treasury, not the state treasury. The school board is primarily concerned with local matters, not state matters. The state exercises little control over the school board. Therefore, not every action by the school board is done on behalf of the state. Each action must be analyzed accordingly. Some actions

- 23 -

are taken on behalf of the localities each school board serves. The state will treat school boards as government entities deserving of its sovereign immunities essentially when the school board is performing its governmental functions, i.e., the establishment and promulgation of local educational policies and procedures, use of school funding, and matters relating to the regulation of the schools under the school board's jurisdiction. Comparatively, the school board exercises its proprietary function primarily through the actions of its employees.

Therefore, a school board's entitlement to sovereign immunity should be analyzed in the same manner as derivative sovereign immunity is analyzed for agents of the state. It is logical to view the school board as an officer of the state rather than to view the school board as an "arm of the state" where questions of sovereign immunity are involved. For this reason, the test for determining whether sovereign immunity bars a claim against a school board should be a matter of degree. Where simple negligence is alleged, the school board should be immune. Where gross negligence is alleged, the claim is not barred.

### D. *Sovereign Immunity Defense Analysis*

We turn now to the case before this Court, in which appellant asserts that the trial court erred because this Court recently stated in *Bradford v. Crain*, No. 0386-22-2, 2023 Va. App. LEXIS 164 (Mar. 14, 2023), that sovereign immunity does not protect a public employee against gross negligence claims, even if the public employee is acting in his or her official capacity. Our appellant also argues that our Supreme Court's jurisprudence on sovereign immunity "make[s] no distinction between official capacities and individual capacities," leaving only a general rule that can be applied notwithstanding the capacity in which a defendant is sued.

As reiterated above, appellant's claim that the capacity in which a defendant is sued is irrelevant is incorrect. Both the Virginia Supreme Court and the United States Supreme Court have clearly stated that "individual capacity" and "official capacity" are wholly distinct. *See*

- 24 -

*Wahlstrom*, 302 Va. at 221 ("Critically, both 'official capacity' and 'individual capacity' have come to be terms of art."); *Graham*, 473 U.S. at 165 (explaining that personal liability suits seek to hold individuals liable for their conduct while acting as an agent or employee of an office). Given the claim of sovereign immunity, the capacity of the suit is critically determinative.

Official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Graham*, 473 U.S. at 165-66 (quoting *Monell*, 436 U.S. at 690 n.55). Here, appellant's suit was effectively against the Prince William County School Board. Thus, the court must determine whether the School Board is entitled to the sovereign immunity asserted by defendants, and the scope of that immunity.

Decisively, in statutory construction and in function, a school board is a municipal corporation. This classification of Virginia school boards was examined thoroughly by the Eastern District Court of Virginia in *Drewrey v. Portsmouth City School Board*. Although *Drewrey* was a case in federal court, its finding that the local Virginia school board was not entitled to sovereign immunity is applicable here.[13] The court in *Drewrey* found that "Virginia law characterizes its school boards as local governmental entities, not arms of the State," and thus the Portsmouth City School Board was not entitled to a claim of sovereign immunity. 264

---

[13] When the Eastern District Court of Virginia remanded appellant's state claims to state court, it cited *Drewrey*, stating:

> All of the individually named [d]efendants were employees of the School Board (a local municipality) . . . [t]he School Board and its employees sued in their official capacities are not arms of the state and are therefore not absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *Drewrey v. Portsmouth City Sch. Bd.*, 264 F. Supp. 3d 724, 730 (E.D. Va. 2017) (concluding that, "in Virginia, local school boards act as independent local governmental agencies, not as arms of the State for purposes of sovereign immunity").

*Drasovean v. Va. Bd. of Educ.*, No. 1:19-cv-286, 2019 U.S. Dist. LEXIS 250619, at *7-9 (E.D. Va. May 3, 2019).

F. Supp. 3d at 730. While the analysis of sovereign immunity in this case must be applied to the school board, the nature of the claim warrants an analysis of the application of derivative sovereign immunity[14] in claims of gross negligence.[15]

In assessing whether sovereign immunity bars a negligence claim, Virginia courts must embark on a two-part inquiry. First, the court must establish whether the defense of sovereign immunity is available to the defendant. Second, if a defendant is entitled to sovereign immunity, the court must determine whether the defendant's actions amounted to gross negligence. If an individual is protected by sovereign immunity, a plaintiff must establish that the actions taken by the official amounted to gross negligence to overcome the sovereign immunity defense. *See Colby*, 241 Va. at 128 ("In Virginia, a government agent entitled to the protection of sovereign immunity is not immunized from suit. Rather, the degree of negligence which must be shown to impose liability is elevated from simple to gross negligence."); *see also Burns*, 283 Va. at 677.

"Virginia law defines gross negligence as 'a heedless and palpable violation of legal duty respecting the rights of others which amounts to the absence of slight diligence, or the want of even scant care.'" *Patterson*, 301 Va. at 198 (quoting *Commonwealth v. Giddens*, 295 Va. 607, 613 (2018)). Stated differently, "[g]ross negligence 'requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness.'"

---

[14] Derivative sovereign immunity applies when an individual claims the sovereign immunity to which his employer may be entitled and is based on the notion that "government can function only through its servants, and certain of those servants must enjoy the same immunity in the performance of their discretionary duties as the government enjoys." *First Va. Bank-Colonial v. Baker*, 225 Va. 72, 79 (1983).

[15] When simple negligence is alleged against a defendant in his individual capacity, Virginia courts must apply the four-part test outlined in *Burns*: "(1) the nature of the function the employee performs; (2) the extent of the governmental entity's interest and involvement in the function; (3) the degree of control and direction exercised by the governmental entity over the employee; and (4) whether the alleged wrongful act involved the exercise of judgment and discretion." 283 Va. at 676 (quoting *Lentz*, 236 Va. at 82).

*Elliott v. Carter*, 292 Va. 618, 622 (2016) (quoting *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487 (2004)). "Because 'the standard for gross negligence is one of indifference, not inadequacy,' a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Id.* (quoting *Kuykendall v. Young Life*, 261 F. App'x 480, 491 (4th Cir. 2008)). "Ordinarily, the question [of] whether gross negligence has been established is a matter of fact to be decided by a jury." *Burns*, 283 Va. at 678 (quoting *Frazier v. City of Norfolk*, 234 Va. 388, 393 (1987)).

Although the appellees were sued in their official capacities, the School Board's status as a municipal corporation and the nature of the functions of the defendants renders their claim of sovereign immunity subject to abrogation based on the degree of negligence alleged by the plaintiff. Thus, the circuit court was incorrect to conclude that School Board Employees enjoyed sovereign immunity "as to all negligence" and were immune from suit under gross negligence. Instead, as our case law instructs "the degree of negligence which must be shown to impose liability is elevated from simple to gross negligence." *Burns*, 283 Va. at 677 (quoting *Colby*, 241 Va. at 128). Here, Drasovean alleged in her complaint that the appellees, acting in their official capacity, committed gross negligence because they were aware that a violent student had been accepted into the intellectual disability class, as well as evidence that the abuse Drasovean suffered occurred in plain view of the teacher in the classroom. Thus, Drasovean properly pled her gross negligence claim against the school officials. Therefore, the circuit court erred by not applying any analysis to the gross negligence claim and sustaining the plea in bar.

CONCLUSION

The trial court erred in granting the appellees' plea in bar based on sovereign immunity. We therefore reverse the circuit court's granting of the plea in bar and remand for proceedings consistent with this option.

*Reversed and remanded.*

Callins, J., dissenting.

The issue before this Court is whether the sovereign immunity enjoyed by employees of a county school board, sued in their official capacity, is absolute or qualified. The majority today determines that it is qualified, irrespective of the capacity in which those employees are sued. I disagree.

As an initial matter, Monica Drasovean raises a single issue for appellate consideration: whether the trial court below erred by sustaining the school board employee appellees' plea in bar and determining that "a government official's sovereign immunity protects the official from gross negligence claims when sued in their official capacity." Drasovean argues on appeal that this Court's prior unpublished decision in *Bradford v. Crain*, No. 0386-22, 2023 Va. App. LEXIS 164 (Mar. 14, 2023),[16] dictates that sovereign immunity may not be relied upon by public officials being sued in their official capacity in the face of allegations of gross negligence. Put differently, Drasovean principally contends that by suing the officials who serve the school board in their official capacity, rather than the school board itself, allegations of gross negligence defeat any defense of sovereign immunity.

The gravamen of the majority's decision turns on the scope of the sovereign immunity extended to individuals sued in their official capacity. Let me first note that I agree with the majority that suing an individual in their official capacity is tantamount to suing the associated agency. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . . It is *not* a suit against the official

---

[16] "The citation of judicial opinions, orders, judgments, or other written dispositions that are not officially reported, whether designated as 'unpublished,' 'not for publication,' 'non precedential,' or the like, is permitted as informative, but will not be received as binding authority." Rule 5A:1(f).

personally, for the real party in interest is the entity."). Discordantly, however, the majority determines that all three appellees—namely the county school superintendent, the county director of special education, and the school principal—are entitled to qualified sovereign immunity, even when sued in their official capacities.

It is true that when an agent of a governmental agency engages in conduct beyond the scope of their duties as an agent, or otherwise engages in conduct which rises to the level of gross negligence, those individuals are liable in their individual capacities. *Cf. Sayers v. Bullar*, 180 Va. 222, 226 (1942) (holding that state employees were entitled to sovereign immunity where the employees caused damage to a claimant's property by setting off explosives in the construction of a pipeline at the Commonwealth's direction). But here, all three school board employees were explicitly sued in their *official* capacities. As the majority points out, "official capacity" and "individual capacity" are terms of art and are "neither interchangeable nor synonymous." *See Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 221 (2023). By suing appellees in their official capacity, Drasovean is necessarily subject to the legal implications of that choice. Drasovean effectively brings suit against the school board, because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166. Given that the school board as an arm of the Commonwealth enjoys absolute sovereign immunity, the trial court below properly sustained appellees' plea in bar. *See Kellam v. Norfolk City Sch. Bd.*, 202 Va. 252, 259 ("[S]chool boards act in connection with public education as agents or instrumentalities of the state, in the performance of a governmental function, and consequently they partake of the state's sovereignty with respect to tort liability. . . . [T]he right to recover should not be determined by the gradation of negligence or by the adjectives used in the complaint.").

- 30 -

Ultimately, the issue here is one of proper pleading. I would affirm the trial court and hold that when seeking to sue an agent of an arm of the Commonwealth, a claimant must sue an agent in their individual capacity, lest the claimant's claim be barred by the Commonwealth's absolute sovereign immunity.[17]

Accordingly, I respectfully dissent.

---

[17] This conclusion stems from the fact that where, as here, the claims allege that agents of a governmental agency have engaged in gross negligence, those agents can only be held liable individually. *See Sayers*, 180 Va. at 226; *see also Kellam*, 202 Va. at 255-56 ("[School boards] are involuntary corporations, organized not for the purpose of profit or gain, but solely for the public benefit . . . . Such corporations are but the agents of the State, for the sole purpose of administering the state system of public education."). The burden is then on the agents to assert sovereign immunity. In doing so, the agents would be required to demonstrate their entitlement to sovereign immunity vis-à-vis the factors delineated in *James v. Jane*, 221 Va. 43, 53 (1980), and by demonstrating that they were otherwise acting within the scope of their authority as an agent of the Commonwealth.

Present:   Judges Athey, Causey and Callins
Argued at Winchester, Virginia


MONICA DRASOVEAN

v.      Record No. 0259-23-4

STEVEN WALTS, ET AL.

MEMORANDUM OPINION* BY
JUDGE DORIS HENDERSON CAUSEY
NOVEMBER 6, 2024

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Carroll A. Weimer, Jr., Judge

Benjamin F. North (Binnall Law Group, PLLC, on briefs), for
appellant.

John F. Cafferky (William B. Porter; Ian J. McElhaney;
Blankingship & Keith, P.C, on brief), for appellees.


The Circuit Court of Prince William County granted appellees' plea in bar and determined,

as a matter of law, that sovereign immunity bars gross negligence claims when a government

official is sued in his official capacity.  On appeal, Monica Drasovean argues that the circuit court

erred in its decision.  Precedent states that when a suit is brought against a government official

under the theory of gross negligence, sovereign immunity does not block that claim.  However,

when a defendant is sued in his official capacity, the suit is effectively against the entity with which

he is employed.  Thus, the question in this case is whether the sovereign immunity to which school

boards are entitled bars claims of gross negligence.  This is a matter of first impression.  We hold

that the circuit court erred in granting the plea in bar, reverse, and remand the holding of the circuit

court to determine whether the alleged actions taken by the appellees amounted to gross negligence.

---

* This opinion is not designated for publication.  See Code § 17.1-413(A).

BACKGROUND

The Prince William County School Board (School Board) operates the Prince William County Public Schools (PWCS). During the 2016-17 school year, Monica Drasovean was a student enrolled in the Special Education Program at C.D. Hylton High School (Hylton). During this time, Dr. Steven Walts served as PWCS's Superintendent, Dr. Michelle Roper served as the Director of Special Education for PWCS, and David Cassady served as the principal of Hylton (collectively School Board Employees).

Around November 2016, H.A.[1] transferred from another high school into Hylton's Special Education Program. Drasovean alleges that H.A. had "a known troubled record involving harmful, sexual, and abusive behavior." According to Drasovean, before H.A. arrived at Hylton, a teacher at Hylton contacted the school's head of the Special Needs Education Department and relayed her opinion that "[H.A.] would not be a good fit for the special needs program at Hylton and would pose a danger to other students." The department head then relayed this concern to Cassady, who contacted Dr. Roper about the transfer. Dr. Roper ultimately allowed H.A. to transfer to Hylton.

Upon his arrival at Hylton, H.A. was placed in several classes with Drasovean that were supervised by teachers, and at least one class included both a teacher and a teacher's aide. Drasovean alleges that, from November 2016 to January 2017, H.A. sexually assaulted Ms. Drasovean by touching her breasts and legs, kissing her, and "trying to take her outside of the school building to perform other sexual acts on her." Drasovean alleges that many of these acts occurred in one of Ms. Drasovean's classes, which was attended by only four other students, and many of "the assaults occurred in open view of other people." Ms. Drasovean's teachers never saw these assaults. On January 23, 2017, Ms. Drasovean reported the assaults to her mother, who then reported them to Hylton.

---

[1] We use initials to refer to the student in an attempt to better protect his privacy.

On January 22, 2019, Drasovean filed her first action (first action) in the Circuit Court for Prince William County against the School Board Employees, the Virginia Board of Education, and directly against the School Board, alleging that, while Ms. Drasovean was a student at Hylton, H.A. assaulted her. The complaint in the first action alleged claims for "negligence/gross negligence" in violation of 42 U.S.C. § 1983, and violations of Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act.

The first action was removed to the United States District Court for the Eastern District of Virginia, where Drasovean's federal claims were dismissed, and her state law negligence claims were remanded to circuit court. The circuit court sustained defendants' demurrers to Drasovean's simple negligence claim with prejudice but granted Drasovean leave to amend her claim for gross negligence.

Drasovean filed an amended complaint alleging a single count of gross negligence against the Virginia Board of Education and the School Board Employees, however, she nonsuited the first action on March 2, 2021. Subsequently, Drasovean filed this action, asserting a single count of gross negligence against the School Board Employees in their official capacities only.

The School Board Employees filed a plea in bar on the ground that Drasovean's complaint against them in their official capacities amounted to a suit against the School Board. They argued that the School Board is entitled to sovereign immunity in tort, and because a suit against them in their official capacities is effectively against the School Board, sovereign immunity should bar the complaint. On January 13, 2023, the circuit court heard oral argument. The court held that

> the manner which the defendants have been sued, that is their
> official capacity, this is tantamount or the same as a suit against the
> governmental entity and the governmental entity enjoys sovereign
> immunity as to . . . all negligence, and as such, these employees in
> their official capacity are immune pursuant to sovereign immunity.

Consequently, the circuit court granted the School Board Employees' plea in bar, dismissing the case with prejudice. This appeal timely follows.

ANALYSIS

I. *Standard of Review*

"The existence of sovereign immunity is a question of law that is reviewed de novo." *Burns v. Gagnon*, 283 Va. 657, 673 (2012) (quoting *Lee v. City of Norfolk*, 281 Va. 423, 439 (2011)). "A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010). "The party asserting a plea in bar bears the burden of proof on the issue presented." *Id.* The circuit court held a hearing where the parties presented their arguments. However, "[w]here no evidence is taken in support of the plea, the trial court, and the appellate court upon review, must rely solely upon the pleadings in resolving the issue presented." *Robinson v. Nordquist*, 297 Va. 503, 513-14 (2019) (quoting *Tomlin v. McKenzie*, 251 Va. 478, 480 (1996)). Additionally, "[i]n doing so, the facts stated in the plaintiff's [complaint] are deemed true." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (second alteration in original) (quoting *Lostrangio v. Laingford*, 261 Va. 495, 497 (2001)). "This approach results in functionally de novo review of the trial court's judgment." *Id.* Here, the issue of gross negligence and school boards is one of first impression for this Court.

Whether the School Board is entitled to sovereign immunity, the scope of that immunity, and whether that immunity bars a claim of gross negligence is the question of this appeal. Given the complexity of this inquiry, it is necessary to understand the history of sovereign immunity, its application under Virginia law, and the difference between the sovereign immunity available to various governmental entities and the sovereign immunity available to individuals employed by those entities.

- 4 -

## II. *History of Sovereign Immunity*

We begin with the doctrine of sovereign immunity, which is rooted in English common law and adhered to the notion that "no suit or action can be brought against the king, even in civil matters, because no court can have jurisdiction over [the Crown]." *Alden v. Maine*, 527 U.S. 706, 715 (1999) (quoting 1 W. Blackstone, *Commentaries on the Laws of England* 234-235 (1765)). "'Dual sovereignty is a defining feature of our Nation's constitutional blueprint.' Upon ratification of the Constitution, the States entered the Union 'with their sovereignty intact.'" *Sossamon v. Texas*, 563 U.S. 277, 283 (2011) (citation omitted). Federalism presupposes that the States retain exclusive sovereignty in some aspects of governance, share sovereign power with the federal government in other aspects, and yield their sovereign power only in those aspects of governance exclusively assigned to the federal government by the United States Constitution." *Clark v. Va. Dep't of State Police*, 292 Va. 725, 728 (2016).

The application of this immunity, in practice, was unique in the United States because of the inherent qualities of federalism: though the nation itself was a sovereign, the states retained their sovereignty in relation to one another and the federal government. This principle led to the ratification of the Eleventh Amendment, which codified state sovereign immunity at the federal level: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The ratification of the Eleventh Amendment followed the 1793 case *Chisholm v. Georgia*, 2 U.S. 419 (1793), where the Court ruled that a citizen of South Carolina could sue the state of Georgia. In that case, Justice Iredell disagreed and reasoned that if the common law barred suit against the sovereign, then the states necessarily, absent express consent, must be similarly protected.

Following Justice Iredell's reasoning, the first congressional meeting following the Court's decision in *Chisholm* led to the ratification of the Eleventh Amendment, which codified a state's immunity from suit in federal courts in actions brought against it by citizens of another state. Although the Eleventh Amendment applied specifically to the power of the federal judiciary, its underlying principles began to be applied by the states in the states. It was the nature of the Eleventh Amendment and the inherent structure of the Constitution itself that led the Court in *Alden* to find that each state has a "constitutional privilege . . . to assert its sovereign immunity in its own courts." 527 U.S. at 754.

A. *Sovereign Immunity: The State as a Party*

When a state is a named party in a suit, it has a right to assert its sovereign immunity as a bar to the continuation of the suit. While a state may waive its sovereign immunity either by statute or by consent, such a waiver must be express.[2] *See Alden*, 527 U.S. at 724 ("The handful of state statutory and constitutional provisions authorizing suits or petitions of right against States only confirms the prevalence of the traditional understanding that a State could not be sued in the absence of an express waiver."). The State is likewise immunized when it is not a named party, but when an officer of the state is sued in a manner that renders the suit

---

[2] Many states, including Virginia, have codified liability for certain state and government employees and entities under certain circumstances. In 1981, the Virginia legislature enacted the Virginia Tort Claims Act, which "constitutes an express limited waiver of the Commonwealth's immunity from tort claims." *Bates v. Commonwealth*, 267 Va. 387, 391 (2004); *see also* Code §§ 8.01-195.1 – 8.01-195.9. Shortly after the law was codified, the Fairfax County Circuit Court held that the Fairfax County "School Board is a 'state agency' as defined in [Code §] 8.01-195.2, and its Plea of Sovereign Immunity is overruled." *Murphy v. Fairfax Cnty. Sch. Bd.*, 6 Va. Cir. 97, 98 (Fairfax Cnty. 1984). In 1986, the Act was amended, explicitly stating that "'[s]chool boards' as defined in paragraph 5 of § 22.1-1 are not state agencies nor are employees of school boards state employees." 1986 Va. Acts ch. 534.

functionally against the state.[3]  *Id.* at 756 ("Some suits against state officers are barred by the rule that sovereign immunity is not limited to suits which name the State as a party if the suits are, in fact, against the State.").  However, though sovereign immunity "bars suits against the States," it does not bar suits against "lesser entities" such as "municipal corporation[s] or other governmental entit[ies] which [are] not an arm of the State."  *Id.*

### 1.  *Derivative Sovereign Immunity: State Agents and Officers*

When an agent or officer of the state is sued in his individual capacity, the suit may be barred by an application of the state's sovereign immunity to the state actor.  *See Messina v. Burden*, 228 Va. 301, 309 (1984).  While the state itself, and the qualifying arms of the state, are entitled to absolute immunity from civil actions, agents and employees of the state may be entitled to that same immunity on a qualified basis.  *See Sayers v. Bullar*, 180 Va. 222, 230 (1942).

Whether an officer or employee of a government agency may claim sovereign immunity is dependent both upon the scope of the immunity to which his employer is entitled and the extent to which his actions satisfy the derivative immunity's qualifications.  *James v. Jane*, 221 Va. 43, 52 (1980).  For example, when state officers are sued in their individual capacity for actions taken within the scope of their employment, they are typically immune, as those actions are considered extensions of the state's authority.  *Sayers*, 180 Va. at 229 ("[t]he alleged act of the defendants was the act of the State").  Such immunity does not extend to an officer of the state, however, when his actions are "so negligent as to take him outside the protection of his

---

[3] *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (stating that the "'general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter'" (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam))); *see also Larson v. Domestic & Foreign Comm. Corp.*, 337 U.S. 682 (1949) (noting that the relief sought and against whom the relief is obtained is the greatest determining factor in questions of whether a suit nominally against an officer is functionally one against the state).

employment" and thus out of the realm of the protection of the state's sovereign immunity. *James*, 221 Va. at 52.  Similarly, the state's sovereign immunity does not extend to employees who engage in intentional misconduct.  *Se*e *Tomlin*, 251 Va. at 481 (stating that "where sovereign immunity is claimed by an agent of the state, rather than by the state as an entity, it will not be extended to acts which constitute a wanton and intentional deviation from the duties the agent has been assigned to undertake").  The characterization of *conduct* as part of a sovereign immunity analysis, though discussed in this section strictly in its application to state agents and officers, raises unique implications in the present case and requires an inquiry as to how "conduct" itself applies to suits against entities.  This will be discussed further along in the analysis.

2. *State Sovereign Immunity Extended to Government Entities: Classification as an "Arm of the State" versus a local municipality*

While *Alden* clearly states that sovereign immunity does not protect municipal corporations or lesser entities from suit, it qualifies that limitation with the phrase "which is not an arm of the State."  527 U.S. at 756.  Governmental entities that *are* considered arms of the State are thus entitled *to the same sovereign immunity as the State itself*.  *See Mann v. County Bd. of Arlington Cnty.*, 199 Va. 169 (1957).

When determining whether a municipality or other local government entity is an "arm of the state," Virginia courts have traditionally inquired as to the entity's creation and the nature of its performed functions.  When a local government entity is "purely local in nature and not a state agency performing a function of state government," then it is "not entitled to the same immunity from tort liability that is enjoyed by the Commonwealth."  *Va. Elec. & Power Co. v.*

*Hampton Redevelop. and Housing Auth.*, 217 Va. 30, 33 (1976).[4]  Thus, an entity "purely local in nature" would not be considered an "arm of the state," but rather a municipality or municipal corporation.  *Id.*  Although municipalities and municipal corporations are tangentially connected to the state government, is well settled that "a municipality is clothed with two-fold functions; one governmental, and the other private or proprietary."  *Hoggard v. City of Richmond*, 172 Va. 145, 147 (1939).  When an injury arises from an alleged negligent exercise of a municipal corporation's authority, courts attempt[5] to categorize the function of the municipal corporation as either governmental or proprietary: a "function is considered governmental if it is the exercise of an entity's political, discretionary, or legislative authority," but a function is considered proprietary when it "is a ministerial act, 'assumed in consideration of the privileges conferred by . . . charter,' and involves no discretion."  *Carter v. Chesterfield Cnty. Health Comm'n*, 259 Va. 588, 591 (2000) (quoting *City of Richmond v. Long's Adm'rs*, 58 Va. (17 Gratt.) 375, 379 (1867)).  Such a distinction is necessary for determining that entity's immunity, as "[m]unicipal corporations are immune from tort liability when performing governmental functions, but are not immune when exercising proprietary functions."  *Id.* at 590.  The distinction between "arms of the state" and local municipalities is crucial to this case, as the school board's respective classification determines the degree of sovereign immunity to which it is entitled.

---

[4] Factors to be considered in distinguishing an entity's local rather than state governmental functions are its statutory authority, the procedures through which its officials are elected or appointed, and how its finances are managed and apportioned.  *See Va. Elec. & Power Co.*, 217 Va. at 33.

[5] Distinguishing between governmental and proprietary functions is a matter of rhetorical ease, but practical difficulty.  *See Carter v. Chesterfield Cnty. Health Comm'n*, 259 Va. 588, 592 (2000) ("the principles for differentiating governmental and proprietary functions are easily recited, as we have often noted, application of these principles 'has occasioned much difficulty'" (quoting *Ashbury v. City of Norfolk*, 152 Va. 278, 282 (1929))).

### 3. *Derivative Sovereign Immunity: Employees of Municipalities and Lesser Government Entities*

In the same way that a municipal corporation or local government body may be entitled to the state's sovereign immunity depending on the nature of its functions, so too may an employee of such an entity be entitled to immunity. When a person is an agent of a "lesser entity" of the state, like a municipal corporation, his potential entitlement to derivative sovereign immunity involves a two-step inquiry: the scope of the immunity to which the entity itself is entitled, and whether the employee satisfies the requirements for claiming that immunity. *Patterson v. City of Danville*, 301 Va. 181, 189 (2022). If a municipality is not itself entitled to sovereign immunity by nature of its proprietary—as opposed to governmental—functions, then its agents are not entitled to sovereign immunity even for acts of simple negligence. *See Fines v. Rappahannock Area Cmty. Servs. Bd.*, 301 Va. 305, 313 (2022).

Just as the inquiry regarding a municipality's entitlement to sovereign immunity centers upon the nature of its functions, an inquiry regarding the derivative sovereign immunity available to its agents centers upon the nature of that agent's actions. *Id.* When an employee is entitled to derivative sovereign immunity, that immunity can be overcome with claims of gross negligence. *Patterson*, 301 Va. at 197 ("[a]llegations of gross negligence can pierce through a derivative-sovereign-immunity defense asserted by an otherwise immune government employee").

However, in certain instances, even acts of simple negligence may proceed against a defendant entitled to sovereign immunity. The Supreme Court of Virginia routinely depends upon a "four, non-exclusive factor" test to determine whether derivative sovereign immunity is available to such an employee in actions alleging simple negligence:

> (i) the nature of the function performed by the employee; (ii) the extent of the [governmental employer's] interest and involvement in the function; (iii) the degree of control and direction exercised by the [governmental employer] over the employee; and (iv)

- 10 -

whether the act complained of involved the use of judgment and discretion.

*Id.* at 190 (alterations in original) (quoting *Messina*, 228 Va. at 309); *see also James*, 221 Va. at 52. While the present case concerns the school board's immunity, not the individual employees' immunity, the analyses set forth in *Patterson*, *Messina*, and *James* underscore the importance in recognizing the variations in sovereign immunity and its availability to certain employees and entities.

### B. Derivative Sovereign Immunity in Virginia: Case Law

In *James v. Jane*, two patients sought to recover damages from their respective injuries following the allegedly negligent acts of the defendants. 221 Va. at 45. Upon the defendants' pleas of sovereign immunity predicated upon their employment with the University of Virginia, the Court established a comprehensive four-factor test for determining when an employee is entitled to derivative sovereign immunity for acts of simple negligence. *Id.* at 53. Although the physicians were each employees of the University, which "no one question[ed]" was an "agency of the Commonwealth of Virginia [and therefore] entitled to the protection of the immunity of the state," the Court found that "[a] physician who fails to use reasonable care in the treatment of a patient acts at his own risk, and is not entitled to invoke the doctrine of sovereign immunity." *Id.* at 51, 55. Thus, employees of state agencies have limited state immunity.

Two years later, the Court relied on its recent decision in *James*, as well as the decisions in *Kellam*,[6] *Crabbe*[7] and *Short*,[8] and the statutory and constitutional constructions of the office of both a high school principal and a superintendent, in deciding whether defendants holding such

---

[6] *Kellam v. Sch. Bd. of City of Norfolk*, 202 Va. 252 (1960).

[7] *Crabbe v. County Sch. Bd. of Northumberland Cnty.*, 209 Va. 356 (1968).

[8] *Short v. Griffiths*, 220 Va. 53 (1979).

offices were entitled to sovereign immunity.  In *Banks v. Sellers*, 224 Va. 168 (1982), when a high school student alleged that the injuries she sustained after being stabbed by another student were the result of the defendants' negligence in failing to provide her with a safe environment, the Court held that both the principal and the superintendent were "entitled to sovereign immunity" because they were, respectively, a "supervisory official who exercises powers involving a considerable degree of judgment and discretion" and "essentially a counterpart to the superintendent [whose] function is very similar." *Id.* at 173.  Notably, the *Banks* case concerned the immunity available to those individuals by the nature of their jobs.  Although the defendants in this case hold the same offices, the defendant officials in *Banks* were not sued in their official capacities.

In 1983, when a plaintiff was injured because of an automobile accident sued the state superintendent of the expressway for his allegedly negligent failure to "provide barriers and other traffic control devices sufficient to prevent vehicles from entering the wrong lane of travel," the Court further explicated its understanding and application of the doctrine of sovereign immunity.  *Hinchey v. Ogden*, 226 Va. 234, 237 (1983).  While the plaintiff in *Hinchey* argued that the purpose of sovereign immunity is to protect state funds and should therefore not apply to the superintendent as she was not seeking to recover from the treasury, the Court "disagree[d] with Hinchey's contention that the protection of the public purse is the sole justification for the doctrine of sovereign immunity." *Id.* at 239.  Instead, the Court found that while the protection of the state treasury is a factor of sovereign immunity, "the principal justification [in this case] for upholding the claim of sovereign immunity is the need for order and uniformity in the administration of the affairs of government." *Id.* at 240.  *Hinchey*, too, was an individual capacity case.

Finally, in the 1984 case *Messina v. Burden*, the Court examined "under what circumstances an employee of a governmental body is entitled to the protection of sovereign immunity." 228 Va. at 307. The Court's comprehensive analysis of the purpose of the doctrine and the history of its application in Virginia courts resulted in an affirmation of the decision below. Most notably, the Court's analysis included the rationale that "the *absence of any claim of gross negligence* or intentional misconduct demonstrates the correctness of the trial court's decision to sustain the plea of sovereign immunity." *Id.* at 311 (emphasis added). The Court noted this absence once again in *Lentz v. Morris*, 236 Va. 78 (1988), finding that the facts in *Lentz* "[did] not support a charge of either gross negligence or intentional misconduct," the Court held that the defendant schoolteacher was entitled to derivative sovereign immunity based upon the immunity of the school board. *Id.* at 82. Both *Messina* and *Lentz* were individual capacity cases.

## C. *Virginia School Boards and Sovereign Immunity*

While the "doctrine of sovereign immunity is 'alive and well' in Virginia," it has not "persevered . . . without substantial debate over its permissible scope and the consistency of its applications." *Messina*, 228 Va. at 307; *Patterson*, 301 Va. at 189. This difficulty is clear insofar as the doctrine has been applied to local school boards and their employees. As this suit pertains to school board employees in their official capacities only, we must analyze sovereign immunity solely in its application to the school board.

In a matter of first impression, the Supreme Court of Virginia held in *Kellam v. School Board of City of Norfolk*, 202 Va. 252 (1960), that a school board was considered an arm of the state. This was reasoned through analogy to similar statutory constructions and holdings in West Virginia law, which the Court found was "applicable and persuasive because of the similarity of the law in Virginia and West Virginia governing school boards." *Id.* at 255. Relying on

*Kellam*'s holding and the subsequent case law involving the application of sovereign immunity to school boards, Virginia courts applied the doctrine in varying ways throughout the next several decades.

When a student brought suit against his shop teacher alleging that the teacher's negligence in allowing the student to use a broken table saw led to the student's injury, the Court in *Crabbe v. School Board of Northumberland County*, 209 Va. 356 (1968), held that the "defendant School Board is immune from liability for the injuries sustained by the plaintiff by reason of its alleged negligence," but disagreed "with the contention of this defendant that the immunity of the School Board from liability to the plaintiff extends to him." *Id.* at 358-59.

Similarly, in 1979, the Court held in *Short v. Griffiths*, 220 Va. 53 (1979), that "employees of a local school board did not enjoy the governmental immunity afforded the board, and were responsible for their acts of simple or ordinary negligence." *Id.* at 56 (relying on *Crabbe*, 209 Va. 356, where the defendant schoolteacher was liable for his negligence despite the School Board enjoying sovereign immunity). *Short* was an individual capacity suit in which the defendant school board employee was not immune, but the school board was. The school board was immune because of its classification in *Kellam* as an "arm of the state" rather than a municipal corporation.

A decade later, however, the Court expressly overruled *Short*, and overruled *Crabbe* "insofar as it address[ed] the employee's liability in that case." *Lentz*, 236 Va. at 82 (holding that defendant gym teacher was entitled to sovereign immunity absent a claim of "gross negligence or intentional misconduct"). The Court's decision in *Lentz* was based upon the factors outlined in *Messina*, which established Virginia's test for determining which government employees were entitled to the sovereign immunity of the state based on their employment.

- 14 -

Relying on *Lentz*, Virginia circuit courts continued to grant school employees derivative sovereign immunity in claims alleging simple negligence. *See Koffman v. Garnett*, 265 Va. 12 (2003); *see also Locklear v. Pometto*, 28 Va. Cir. 307 (Fairfax Cnty. 1992); *Summerell v. Wolfskill*, 34 Va. Cir. 518 (Southampton Cnty. 1994). In several cases, Virginia circuit courts have held that school boards and their employees enjoy immunity even when gross negligence is alleged. *Croghan v. Fairfax County Sch. Bd.*, 59 Va. Cir. 120, 121 (Fairfax Cnty. 2002) ("[T]he immunity shared by the state and its agencies (including school boards) is absolute and applies as a bar to liability whether the degree of alleged negligence is simple or gross."); *Mattox v. Campbell Cnty. Sch. Bd.*, 37 Va. Cir. 221, 222 (Campbell Cnty. 1995) ("[T]he doctrine of sovereign immunity protects the Campbell County School Board from allegations of both simple negligence and gross negligence.").

In 2012, however, the Circuit Court in the City of Suffolk overruled the school board's plea of sovereign immunity as to plaintiff's "[c]ounts IV and XX of the Complaint," since those counts "allege[d] gross negligence by the School Board and its employees" and "sovereign immunity does not apply where gross negligence is alleged." *Simpson v. Thorsen*, 84 Va. Cir. 252, 255 (Suffolk 2012). While this holding applied specifically to the sovereign immunity of the school board, the issue of derivative sovereign immunity as applied to school board employees was decided by the Virginia Supreme Court only several months later in *Burns*.

When a former Gloucester County High School student filed a complaint against two students and the assistant principal alleging "simple and gross negligence, assault, and battery," the Court explained that although "an individual working for an immune governmental entity is entitled to the protection of sovereign immunity under the common law, he is not immunized from suit" and that in order to overcome an employee's derivative sovereign immunity, the

- 15 -

"'degree of negligence . . . is elevated from simple to gross negligence.'" *Burns*, 283 Va. at 663, 677 (quoting *Colby v. Boyden*, 241 Va. 125, 128 (1991)).

Although a suit against the named defendants in their official capacities is functionally a claim against the school board, the school board's sovereign immunity should be scrutinized under the factors set forth in *Messina*, *Lentz*, and *Burns*, because Virginia school boards should be considered municipal corporations rather than arms of the state.

### D. *Virginia School Boards should be considered municipal corporations rather than arms of the state*

In both statutory construction[9] and in function, a school board is a municipal corporation. This classification of Virginia school boards was examined thoroughly by the Eastern District Court of Virginia in *Drewrey v. Portsmouth City School Board*. 264 F. Supp. 3d 724 (E.D. Va. 2017). In *Drewrey*, the court examined whether the Portsmouth City School Board was entitled to sovereign immunity. Based on four factors, originally applied by the Fourth Circuit Court of Appeals in *Cash v. Granville County Board of Education*, 242 F.3d. 219 (4th Cir. 2001), the District Court found that the school board was not an arm of the State and therefore not entitled to sovereign immunity. *Drewrey*, 264 F. Supp. 3d at 727. The court in *Drewrey* examined the following factors: (1) the State treasury, (2) the degree of control exercised by the state over the school board, (3) the degree to which the school board was focused on local versus statewide concerns, and (4) how the school board was treated under state law. *Id.* The court found that "Virginia law characterizes its school boards as local governmental entities, not arms of the State," and thus the Portsmouth City School Board was not entitled to a claim of sovereign immunity. *Id.* at 730. When applied to the facts in this case, specifically, to the Prince William City School Board, the *Drewrey* factors show that the school board should be treated as a

---

[9] Code § 22.1-71.

- 16 -

municipal corporation rather than an arm of the State. Thus, Prince William County School Board is not entitled to sovereign immunity according to the *Drewrey* factors.

### III. *The Drewrey Factors*

### A. *The State Treasury Factor*

Code § 22.1-82(B) requires that all "costs, expenses and liabilities of [any legal proceeding to which the school board, member or official may be party[10]] shall be paid out of funds appropriated to the school board." The funds appropriated to the school board are an amalgamation of state funds, federal funds, local funds, and donations. Code § 22.1-88. Thus, even if an argument could be made that funds apportioned to the School Board are partially funded by the State and thus affect the State treasury, it is not the State treasury itself. Such logic would run against the doctrine that suits may lie against officers in their individual capacity so long as the judgments paid come from the officer's pockets. An officer's income is at least partially made up of State funds. An indirect or unsubstantial monetary contribution to a suit cannot be considered functionally the same as a suit which solely and directly implicates the State treasury. Thus, PWCS Board funds are not part of the Virginia State Treasury.

### B. *Degree of Control*

Virginia school boards exercise both discretionary and financial control over the operation of their schools. *Drewrey*, 264 F. Supp. 3d at 728. While the Commonwealth has some degree of control, for the most part Virginia school boards "retain[] sole decisionmaking authority" and "a wide breadth of financial autonomy and independent responsibilities." *Id.*; Code §§ 22.1-28, -79. Furthermore, its officials are "locally elected and appointed" as opposed to appointed by the Governor. *Drewrey*, 264 F. Supp. 3d at 729; Code § 22.1-76(A). The degree of Commonwealth involvement and control over local school boards ends at their statutory

---

[10] *See* Code § 22.1-82(A) for alteration.

- 17 -

construction,[11] which designates the school board as a "body corporate." Code § 22.1-71. Statutory creation does not demonstrate enough state control over school boards to classify them as "arms of the state" rather than municipal corporations. The Commonwealth of Virginia has a limited degree of control over the PWCS Board.

## C. *Local versus Statewide Concerns*

Although school boards are tasked with the promulgation of the Commonwealth's educational standards, each school board sets its own "locality-level policies," such as determining the length of the school year, the curriculum, "the methods of teaching[,] and the government to be employed in the schools." *Drewrey*, 264 F. Supp. 3d at 730. While these policies cannot be inconsistent with the statewide standards, the school boards, comprised wholly of locally selected members, are solely responsible for the establishment and promulgation of those policies. Code § 22.1-79(5). Therefore, although Virginia exercises "limited involvement in some general standards for state-wide education," the "concerns of [Virginia] school boards are primarily local." *Drewrey*, 264 F. Supp. 3d at 730.

## D. *State Law's Treatment of the Entity*

*Drewrey*'s fourth factor regarding the state law's treatment of the entity in question requires the most nuanced analysis for the purposes of the present case. The court found in *Drewrey* that, although the Board argued that "the Supreme Court of Virginia found [in *Kellam*] that a school board is considered an arm of the State," *Kellam* was not applicable, as the case at hand was a question of federal law rather than a claim in tort. *Id*. Although the present case involves a tort law claim, and therefore invokes *Kellam*, it would be a mistake to "treat[] a state court decision as to whether an entity is a state actor as determinative." *Id*. Rather than applying

---

[11] Code § 22.1-28.

- 18 -

the dicta of a single case in isolation, *Drewrey*'s fourth factor is better analyzed through a wholistic understanding of the state's treatment of the entity over time.

The Virginia Tort Claims Act abrogated the sovereign immunity of state agencies for actions in tort. Code § 8.01-195.2. This abrogation led the Fairfax County Circuit Court to find that because the "School Board [was] a 'state agency' as defined [in the Act], [its] Plea of Sovereign Immunity is overruled." *Murphy v. Fairfax Cnty. Sch. Bd.*, 6 Va. Cir. 97, 98 (Fairfax Cnty. 1984). In 1986, the Act was amended to explicitly state that school boards were not considered agencies of the state for purposes of the Act, thereby excluding school boards from the statutory abrogation of the sovereign immunity of state agencies. 1986 Va. Acts ch. 534. While this exclusion in light of the decision in *Murphy* implies that the Virginia legislature wants school boards to retain their entitlement to sovereign immunity, classifying the school boards as municipal corporations does not undermine that goal. Rather, it subjects local school boards to the same analysis and protection as any other government municipality. In actions concerning its governmental functions, school boards will still be immune in tort. This immunity will accomplish what all sovereign immunity doctrine seeks to accomplish—the necessary furtherance of governmental goals, policies, and procedures will not be prohibited for fear of suit. However, it will also ensure the protection of those to whom the school board is accountable when the school board is engaged in proprietary functions. Thus, overall, school boards have been treated as municipalities by the State of Virginia, and their entitlement to sovereign immunity should be subject to the same analysis as other municipalities.

IV. *PWCS Board: Government Entity or Municipality*

In light of the varying degrees and possible applications of sovereign immunity, the question raised on appeal requires two wholly separate and distinct analyses. First, because the circuit court's determination that "the manner in which the defendants have been sued, that is

- 19 -

their official capacity, [is] tantamount or the same as a suit against the [School Board]," we must first decide whether the circuit court erred in classifying the school board as a "government entity" rather than a "municipality." As noted earlier in our analysis, the scope of the immunity available to the School Board is dependent upon this classification. Second, this Court must determine, for the first time, whether the degree of negligence pled against an entity, as opposed to an individual, should determine whether the suit is barred by sovereign immunity.

### A. *Official Capacity versus Individual Capacity*

"Official capacity" suits are effectively suits against the entity for whom the individual works and are separate and distinct from "individual capacity" suits where the individual is sued for the actions he took while acting within the scope of his employment. The capacity in which these defendants were sued is neither irrelevant nor a matter of semantics. The Virginia Supreme Court and the United States Supreme Court have made it clear that "individual capacity" and "official capacity" are wholly distinct. *See Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 221 (2023) ("Critically, both 'official capacity' and 'individual capacity' have come to be terms of art.").

Official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).

> Proper application of [the] principle [that "liability on the merits and responsibility for fees go hand in hand"] in damages actions against public officials requires careful adherence to the distinction between personal- and official-capacity action suits. Because this distinction apparently continues to confuse lawyers and confound lower courts, we attempt to define it more clearly through concrete examples of the practical and doctrinal differences between personal and official capacity actions.

*Kentucky v. Graham*, 473 U.S. 159, 164 (1985).

Individual or personal capacity suits against government agents seek to impose personal liability upon the officer for his actions taken under color of state title. In contrast, an official-

- 20 -

capacity suit is simply "another way of pleading an action against an entity for which an officer is an agent." *Monell*, 436 U.S. at 690 n.55. Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," because "while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Graham*, 473 U.S. at 166.

Indeed, the Supreme Court recently re-emphasized this distinction in *Suffolk City School Board v. Wahlstrom*, 302 Va. at 221:

> In the more than a century since *Ex Parte Young*, [209 U.S. 123 (1990),] public officials have, depending on the circumstances, been subject to suit in either their official capacities or their individual capacities, with different procedures and immunity rules applying as a result of those circumstances. Critically, both "official capacity" and "individual capacity" have come to be terms of art as it pertains to suits against government officials and are neither interchangeable nor synonymous.

Here, because each of the named defendants (officers/agents of the School Board) was sued only in his or her official capacity, the suit is essentially a suit against the (government entity) Prince William County School Board. Indeed, it was upon this basis that the trial court granted appellees' plea in bar. Thus, the proper inquiries for this Court on appeal are determining whether the School Board is entitled to sovereign immunity and, if so, the scope of that immunity.

## B. *PWCS Board Sovereign Immunity*

It is undisputed that the suit against the three named defendants, in their official capacity, is functionally against the School Board. Most illustrative of this distinction and its importance is this Court's most recent decision regarding school boards in *Ibanez v. Albemarle County School Board*, 80 Va. App. 169 (2024). In *Ibanez*, plaintiff parents, on behalf of themselves and their minor children, sued the school board alleging that its Anti-Racism Policy "violate[d] their

- 21 -

rights under the Virginia Constitution and a Virginia statute." *Id.* at 176. The trial court "found that the underlying constitutional and statutory provisions were not self-executing and dismissed their claims for lack of standing," and sustained the defendants' plea in bar raising the defense of sovereign immunity. *Id.* This Court noted that, pursuant to the holdings in *Kellam* and *Banks*, "the doctrine of sovereign immunity 'applies not only to the state, but also to certain government officials,'" which "generally includes school boards . . . and school officials acting in their official capacities." *Id.* at 189 (quoting *Gray v. Va. Sec'y of Transp.*, 276 Va. 93, 102 (2008)). Without relying too heavily on the import of a single word, this Court's use of the word "generally" regarding the sovereign immunity of school boards allows for the understanding that a differentiation can and should be made between school boards' policies and the actions of its officials.

Although a school board should be entitled to sovereign immunity insofar as such entitlement serves the doctrinal purpose of protecting a local government entity's ability to promulgate its state-apportioned duties, its sovereign immunity should be qualified in the same manner as the immunity to which an employee or official is entitled. The school board can create, adopt, and implement policies according to its statutory duties. Where a school board is sued based on its policies, the doctrine of sovereign immunity is reasonable. However, where a school board employee is sued for the actions taken under color of his title, the sovereign immunity to which he is entitled is based upon the characterization of his conduct. In this case, although the underlying alleged actions are attributable to the three individually named defendants, the "official capacity" status of the suit necessarily characterizes those actions as actions *taken by the school board*.[12] In reality, the school board cannot, as an entity, "act" in the

---

[12] This recalls the earlier point, that the characterization of conduct in derivative sovereign immunity cases raises a unique question in this case.

- 22 -

ordinary sense of the term; it "acts" *through* its agents and employees. *See Pulliam v. Coastal Emergency Servs. of Richmond, Inc.*, 257 Va. 1, 24 (1999) ("A corporation can act only through its officers and agents."). This distinction closely mirrors the distinction of governmental and proprietary functions comparatively in the determination of the sovereign immunity available to municipal corporations or local government entities.

For that reason, the same analysis should be applied to school boards. Where a school board's actions should be considered governmental, like the promulgation and implementation of policies, it should be entitled to sovereign immunity. But where, as here, the underlying claim is based upon individual actors or actions rather than policy or other governmentally necessary duties, a school board's "actions" should be considered proprietary. When based upon the characterization of the actions or omissions of its employees, the extent of the school board's sovereign immunity should be subject to the analysis in *Lentz*: the school board should be immune for acts of simple negligence, but should not be immune for acts of gross negligence or intentional misconduct. Immunity cannot be asserted when gross negligence, rather than simple negligence, is alleged.

C. *Whether Sovereign Immunity Bars a Claim against a School Board Is a Matter of Degree*

When a local entity, like a school board, is sued based on its agents' actions, the factors differentiating the entity from the state itself do not support an entitlement to absolute immunity such that actions alleging gross negligence should not proceed. The *Drewrey* analysis is essential to this determination. Appropriately, when a judgment is rendered against a school board, funds awarded in the judgment come from the school board treasury, not the state treasury. The school board is primarily concerned with local matters, not state matters. The state exercises little control over the school board. Therefore, not every action by the school board is done on behalf of the state. Each action must be analyzed accordingly. Some actions

- 23 -

are taken on behalf of the localities each school board serves. The state will treat school boards as government entities deserving of its sovereign immunities essentially when the school board is performing its governmental functions, i.e., the establishment and promulgation of local educational policies and procedures, use of school funding, and matters relating to the regulation of the schools under the school board's jurisdiction. Comparatively, the school board exercises its proprietary function primarily through the actions of its employees.

Therefore, a school board's entitlement to sovereign immunity should be analyzed in the same manner as derivative sovereign immunity is analyzed for agents of the state. It is logical to view the school board as an officer of the state rather than to view the school board as an "arm of the state" where questions of sovereign immunity are involved. For this reason, the test for determining whether sovereign immunity bars a claim against a school board should be a matter of degree. Where simple negligence is alleged, the school board should be immune. Where gross negligence is alleged, the claim is not barred.

D. *Sovereign Immunity Defense Analysis*

We turn now to the case before this Court, in which appellant asserts that the trial court erred because this Court recently stated in *Bradford v. Crain*, No. 0386-22-2, 2023 Va. App. LEXIS 164 (Mar. 14, 2023), that sovereign immunity does not protect a public employee against gross negligence claims, even if the public employee is acting in his or her official capacity. Our appellant also argues that our Supreme Court's jurisprudence on sovereign immunity "make[s] no distinction between official capacities and individual capacities," leaving only a general rule that can be applied notwithstanding the capacity in which a defendant is sued.

As reiterated above, appellant's claim that the capacity in which a defendant is sued is irrelevant is incorrect. Both the Virginia Supreme Court and the United States Supreme Court have clearly stated that "individual capacity" and "official capacity" are wholly distinct. *See*

- 24 -

*Wahlstrom*, 302 Va. at 221 ("Critically, both 'official capacity' and 'individual capacity' have come to be terms of art."); *Graham*, 473 U.S. at 165 (explaining that personal liability suits seek to hold individuals liable for their conduct while acting as an agent or employee of an office). Given the claim of sovereign immunity, the capacity of the suit is critically determinative.

Official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Graham*, 473 U.S. at 165-66 (quoting *Monell*, 436 U.S. at 690 n.55). Here, appellant's suit was effectively against the Prince William County School Board. Thus, the court must determine whether the School Board is entitled to the sovereign immunity asserted by defendants, and the scope of that immunity.

Decisively, in statutory construction and in function, a school board is a municipal corporation. This classification of Virginia school boards was examined thoroughly by the Eastern District Court of Virginia in *Drewrey v. Portsmouth City School Board*. Although *Drewrey* was a case in federal court, its finding that the local Virginia school board was not entitled to sovereign immunity is applicable here.[13] The court in *Drewrey* found that "Virginia law characterizes its school boards as local governmental entities, not arms of the State," and thus the Portsmouth City School Board was not entitled to a claim of sovereign immunity. 264

---

[13] When the Eastern District Court of Virginia remanded appellant's state claims to state court, it cited *Drewrey*, stating:

> All of the individually named [d]efendants were employees of the School Board (a local municipality) . . . [t]he School Board and its employees sued in their official capacities are not arms of the state and are therefore not absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *Drewrey v. Portsmouth City Sch. Bd.*, 264 F. Supp. 3d 724, 730 (E.D. Va. 2017) (concluding that, "in Virginia, local school boards act as independent local governmental agencies, not as arms of the State for purposes of sovereign immunity").

*Drasovean v. Va. Bd. of Educ.*, No. 1:19-cv-286, 2019 U.S. Dist. LEXIS 250619, at *7-9 (E.D. Va. May 3, 2019).

F. Supp. 3d at 730. While the analysis of sovereign immunity in this case must be applied to the school board, the nature of the claim warrants an analysis of the application of derivative sovereign immunity[14] in claims of gross negligence.[15]

In assessing whether sovereign immunity bars a negligence claim, Virginia courts must embark on a two-part inquiry. First, the court must establish whether the defense of sovereign immunity is available to the defendant. Second, if a defendant is entitled to sovereign immunity, the court must determine whether the defendant's actions amounted to gross negligence. If an individual is protected by sovereign immunity, a plaintiff must establish that the actions taken by the official amounted to gross negligence to overcome the sovereign immunity defense. *See Colby*, 241 Va. at 128 ("In Virginia, a government agent entitled to the protection of sovereign immunity is not immunized from suit. Rather, the degree of negligence which must be shown to impose liability is elevated from simple to gross negligence."); *see also Burns*, 283 Va. at 677.

"Virginia law defines gross negligence as 'a heedless and palpable violation of legal duty respecting the rights of others which amounts to the absence of slight diligence, or the want of even scant care.'" *Patterson*, 301 Va. at 198 (quoting *Commonwealth v. Giddens*, 295 Va. 607, 613 (2018)). Stated differently, "[g]ross negligence 'requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness.'"

---

[14] Derivative sovereign immunity applies when an individual claims the sovereign immunity to which his employer may be entitled and is based on the notion that "government can function only through its servants, and certain of those servants must enjoy the same immunity in the performance of their discretionary duties as the government enjoys." *First Va. Bank-Colonial v. Baker*, 225 Va. 72, 79 (1983).

[15] When simple negligence is alleged against a defendant in his individual capacity, Virginia courts must apply the four-part test outlined in *Burns*: "(1) the nature of the function the employee performs; (2) the extent of the governmental entity's interest and involvement in the function; (3) the degree of control and direction exercised by the governmental entity over the employee; and (4) whether the alleged wrongful act involved the exercise of judgment and discretion." 283 Va. at 676 (quoting *Lentz*, 236 Va. at 82).

*Elliott v. Carter*, 292 Va. 618, 622 (2016) (quoting *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487 (2004)).  "Because 'the standard for gross negligence is one of indifference, not inadequacy,' a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care."  *Id.* (quoting *Kuykendall v. Young Life*, 261 F. App'x 480, 491 (4th Cir. 2008)).  "Ordinarily, the question [of] whether gross negligence has been established is a matter of fact to be decided by a jury."  *Burns*, 283 Va. at 678 (quoting *Frazier v. City of Norfolk*, 234 Va. 388, 393 (1987)).

Although the appellees were sued in their official capacities, the School Board's status as a municipal corporation and the nature of the functions of the defendants renders their claim of sovereign immunity subject to abrogation based on the degree of negligence alleged by the plaintiff.  Thus, the circuit court was incorrect to conclude that School Board Employees enjoyed sovereign immunity "as to all negligence" and were immune from suit under gross negligence.  Instead, as our case law instructs "the degree of negligence which must be shown to impose liability is elevated from simple to gross negligence."  *Burns*, 283 Va. at 677 (quoting *Colby*, 241 Va. at 128).  Here, Drasovean alleged in her complaint that the appellees, acting in their official capacity, committed gross negligence because they were aware that a violent student had been accepted into the intellectual disability class, as well as evidence that the abuse Drasovean suffered occurred in plain view of the teacher in the classroom.  Thus, Drasovean properly pled her gross negligence claim against the school officials.  Therefore, the circuit court erred by not applying any analysis to the gross negligence claim and sustaining the plea in bar.

## CONCLUSION

The trial court erred in granting the appellees' plea in bar based on sovereign immunity. We therefore reverse the circuit court's granting of the plea in bar and remand for proceedings consistent with this option.

*Reversed and remanded.*

Callins, J., dissenting.

The issue before this Court is whether the sovereign immunity enjoyed by employees of a county school board, sued in their official capacity, is absolute or qualified. The majority today determines that it is qualified, irrespective of the capacity in which those employees are sued. I disagree.

As an initial matter, Monica Drasovean raises a single issue for appellate consideration: whether the trial court below erred by sustaining the school board employee appellees' plea in bar and determining that "a government official's sovereign immunity protects the official from gross negligence claims when sued in their official capacity." Drasovean argues on appeal that this Court's prior unpublished decision in *Bradford v. Crain*, No. 0386-22, 2023 Va. App. LEXIS 164 (Mar. 14, 2023),[16] dictates that sovereign immunity may not be relied upon by public officials being sued in their official capacity in the face of allegations of gross negligence. Put differently, Drasovean principally contends that by suing the officials who serve the school board in their official capacity, rather than the school board itself, allegations of gross negligence defeat any defense of sovereign immunity.

The gravamen of the majority's decision turns on the scope of the sovereign immunity extended to individuals sued in their official capacity. Let me first note that I agree with the majority that suing an individual in their official capacity is tantamount to suing the associated agency. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . . It is *not* a suit against the official

---

[16] "The citation of judicial opinions, orders, judgments, or other written dispositions that are not officially reported, whether designated as 'unpublished,' 'not for publication,' 'non precedential,' or the like, is permitted as informative, but will not be received as binding authority." Rule 5A:1(f).

personally, for the real party in interest is the entity."). Discordantly, however, the majority determines that all three appellees—namely the county school superintendent, the county director of special education, and the school principal—are entitled to qualified sovereign immunity, even when sued in their official capacities.

It is true that when an agent of a governmental agency engages in conduct beyond the scope of their duties as an agent, or otherwise engages in conduct which rises to the level of gross negligence, those individuals are liable in their individual capacities. *Cf. Sayers v. Bullar*, 180 Va. 222, 226 (1942) (holding that state employees were entitled to sovereign immunity where the employees caused damage to a claimant's property by setting off explosives in the construction of a pipeline at the Commonwealth's direction). But here, all three school board employees were explicitly sued in their *official* capacities. As the majority points out, "official capacity" and "individual capacity" are terms of art and are "neither interchangeable nor synonymous." *See Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 221 (2023). By suing appellees in their official capacity, Drasovean is necessarily subject to the legal implications of that choice. Drasovean effectively brings suit against the school board, because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166. Given that the school board as an arm of the Commonwealth enjoys absolute sovereign immunity, the trial court below properly sustained appellees' plea in bar. *See Kellam v. Norfolk City Sch. Bd.*, 202 Va. 252, 259 ("[S]chool boards act in connection with public education as agents or instrumentalities of the state, in the performance of a governmental function, and consequently they partake of the state's sovereignty with respect to tort liability. . . . [T]he right to recover should not be determined by the gradation of negligence or by the adjectives used in the complaint.").

Ultimately, the issue here is one of proper pleading.  I would affirm the trial court and hold that when seeking to sue an agent of an arm of the Commonwealth, a claimant must sue an agent in their individual capacity, lest the claimant's claim be barred by the Commonwealth's absolute sovereign immunity.[17]

Accordingly, I respectfully dissent.

---

[17] This conclusion stems from the fact that where, as here, the claims allege that agents of a governmental agency have engaged in gross negligence, those agents can only be held liable individually.  *See Sayers*, 180 Va. at 226; *see also Kellam*, 202 Va. at 255-56 ("[School boards] are involuntary corporations, organized not for the purpose of profit or gain, but solely for the public benefit . . . .  Such corporations are but the agents of the State, for the sole purpose of administering the state system of public education.").  The burden is then on the agents to assert sovereign immunity.  In doing so, the agents would be required to demonstrate their entitlement to sovereign immunity vis-à-vis the factors delineated in *James v. Jane*, 221 Va. 43, 53 (1980), and by demonstrating that they were otherwise acting within the scope of their authority as an agent of the Commonwealth.